[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 27, and the defendant husband, 31, intermarried on May 25, 1984 at Bristol, Connecticut. The plaintiff was then a junior in high school and the defendant was then apprenticed to a screw machine operator. The plaintiff's family helped them set up housekeeping, in a one bedroom apartment. The defendant spent some time in the military service, returned to finish his apprenticeship and then, over seven years ago, joined the City of Waterbury Fire Department. He attained his current rank of Lieutenant on June 30, 1992. In the same month the plaintiff obtained her G.E.D. high school diploma, having left school upon her marriage.
The parties have two children, Brett born on October 10, 1984 and Leah born on December 3, 1986. The younger child has a speech difficulty, having been treated at Newington Hospital in the past. CT Page 6068
The parties purchased their current home located at 2020 Wall Street, Waterbury in February, 1986 for $60,000. The defendant's grandfather gave $3,000 and the parties lived at the plaintiff's parents for two months to save for the closing costs. The defendant testified that, in his opinion, the present fair market value is $85,000. The plaintiff lists the estimated value at $74,000 on her financial affidavit. There is a first mortgage balance of $55,000 and a second mortgage of $27,000. The court accepts the defendant's opinion of value and concludes that there is currently no equity in the parcel. The plaintiff does not want the house and she testified that her desire is to move to Florida with their children. Her parents have retired to Cape Coral and the plaintiff believes employment opportunities for her there will be greater.
In 1993 the defendant earned $63,337.75 gross wages, had $8,663.13 federal withholding, $918.40 FICA, $4,404.54 Wtby pension and $1,840 TSA[1] with $45,531.92 net wages, (Plaintiff's Exhibit A). In 1994 through the period ending 5/19/94 (20 weeks), the defendant has earned $19,606.16 gross wages less $2,821.17 withholding, less $284.29 FICA less $454.97 State Tax less $1,367.81 City Pension for a net wage of $14,677.92[2]. His weekly net wages for 1994 is averaging $734.00. The court is aware of the large payment made every December for 13 holidays and longevity but because of the court orders to be entered infra, the weekly net wages are not being adjusted.
The defendant's pension will vest in 1997, will contain $23,000 through this year, is not subject to ERISA or a QDRO order. The defendant contributes 7% of his earnings and is entitled to a lifetime benefit upon retirement (Plaintiff's Exhibit G). Since the defendant is retaining this asset which was created during the marriage, the court will order a series of annual payments to be made by the defendant to the plaintiff.
The defendant's medical program covering the plaintiff and their children is written by Blue Cross. The cost of continuation under COBRA for the plaintiff is $274.60 monthly.
The defendant has conducted a snow plowing service (Plaintiff's Exhibit B) but the court also accepts the defendant's testimony that he replaced the transmission at a cost of $850 at the beginning of this past winter. The court concludes that it is not necessary to adjust the defendant's net CT Page 6069 income to reflect this seasonal and somewhat speculative source of earnings.
Although the defendant missed one overtime opportunity, he remains available for such assignments and the court does not find that he has displayed a pattern of avoiding opportunities for overtime work.
Without repeating the evidence in this opinion, suffice it to say that the defendant's conduct was the principal cause of the marriage breakdown.
Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment.
1. A decree is entered dissolving the marriage of these parties on the ground of irretrievable breakdown, the parties having so stipulated in writing.
2. Sole custody of the two children is awarded to the plaintiff. Reasonable visitation rights are awarded to the defendant.
Although the plaintiff has proposed a structured visitation schedule based on the plaintiff's contemplated move to Florida, the court has no basis at the present time to conclude that the parties are unable to arrange appropriate visitation.
3. A parenting course was ordered pursuant to the applicable statute on May 12, 1994 which each party shall complete in a prompt manner.
4. Child support in the total amount of $269.50 weekly shall be paid by the defendant to the plaintiff for the two children.[3]
5. Alimony, periodic in nature, shall be paid by the defendant to the plaintiff in the sum of $125 weekly until the plaintiff's remarriage or the death of either party.
6. A wage withholding order is entered to secure the child support and periodic alimony orders.
7. The defendant shall continue medical coverage for his minor children. The parties shall divide any reimbursed CT Page 6070 expenses incurred for the children's health care or treatment with the defendant paying 75% of same until July 1, 1995 when the parties shall equally divide any such expenses thereafter incurred.
8. Since the plaintiff may elect medical coverage pursuant to COBRA, it shall be at her expense, the periodic alimony order entered above being in contemplation of same. This will also offer the plaintiff the flexibility of transferring to some form of coverage provided in Florida.
9. Sole ownership of the real estate known as 202 Wall St., Waterbury is awarded to the defendant who shall assume the mortgage debt and taxes thereon, saving the plaintiff harmless and indemnified. The plaintiff is awarded continued exclusive possession of the premises until 4:00 p. m. on July 31, 1994. The plaintiff shall pay the June and July mortgage installments in a timely fashion in lieu of use and occupancy.
10. The contents of the marital home shall be divided as listed on plaintiff's Exhibit J, except the defendant is awarded, from said list:
 Washer Dryer — large cap. Refrigerator in kitchen Dishwasher Stove and Oven Bugwacker Weedwacker Car books
The parties shall arrange to divide family photos or by creating appropriate duplicates.
11. As lump sum alimony, the defendant is ordered to pay to the plaintiff the sum of $11,000 in annual installments of $2,200 commencing on December 30, 1994 and like installments due on the same day for the succeeding four (4) years. This award is in lieu of any interest in the defendant's pension.
12. The plaintiff shall be solely responsible for paying the Stu Erris bills and the Northeast Utilities bills (Plaintiff's Exhibit H).
13. The defendant shall be solely responsible for all the CT Page 6071 bills listed on his financial affidavit except for the Stu Erris bill. He shall also be solely responsible for the Allstate bill (Plaintiff's Exhibit C) and any deficiency arising from the repossession of the 1994 Oldsmobile auto (Plaintiff's Exhibit D).
14. The defendant shall maintain $30,000 life insurance listed as "Police and Fire" naming the two children as the primary beneficiary until both have attained majority. Proof of coverage shall be furnished to the plaintiff.
15. The plaintiff is awarded sole ownership of the BMW 318i provided she assumes any loan lien thereon created at time of purchase. On the alternative, the plaintiff may refuse to accept ownership, such election to be made in writing by July 1, 1994 and the defendant shall thereafter retain such vehicle and he shall be solely responsible for any loan lien or taxes.
16. The defendant shall retain the truck as his sole property.
17. The plaintiff is awarded an allowance to prosecute of $3,000 payable in six (6) installments of $500 each commencing on September 1, 1994 and on the first day of December, 1994, March, 1995, June, 1995, September, 1995 and December 1, 1995.
The attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.